# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION, CLEVELAND

| | | |
|---|---|---|
| **The City of Cleveland**, ex rel. | : | |
| **William G. Wade** | : | |
| 802 Town Farm Road | : | Civil Action No.  1:13-cv-2297 |
| Unity, Maine 04988 | : | |
| | : | |
| Plaintiff-Relator, | : | |
| | : | |
| v. | : | |
| | : | |
| **The City of Cleveland,** | : | **COMPLAINT** |
| c/o Barbara A. Langhenry, Director, | : | |
| Department of Law, | : | **WITH DEMAND FOR JURY TRIAL** |
| 601 Lakeside Avenue, Room 106 | : | |
| Cleveland, OH 44114 | : | |
| | : | |
| and | : | |
| | : | |
| **Cleveland Botanical Garden** | : | |
| c/o Statutory Agent | : | |
| Natalie Ronayne | : | |
| 1267 West 103rd Street | : | |
| Cleveland, OH 44102 | : | |
| | : | |
| and | : | |
| | : | |
| **University Circle Incorporated** | : | |
| c/o Statutory Agent | : | |
| Christopher S. Ronayne | : | |
| 10831 Magnolia Drive | : | |
| Cleveland, OH 44106 | : | |
| | : | |
| Defendants-Respondents. | : | |
| | : | |
| | : | |

## NATURE OF THE ACTION

1.      This is a "taxpayer's action" under O.R.C. § 733.59 and section 90 of the Charter

of the City of Cleveland, and under Ohio common law, brought on behalf of the City of

Cleveland and all its citizens and taxpayers, seeking injunctive relief and specific performance of certain obligations under O.R.C. §§ 755.19 and 733.57 and section 88 of the Charter of the City of Cleveland, and under Ohio common law.

## THE PARTIES

2.     Plaintiff-Relator William G. Wade ("Relator" or "Mr. Wade") is a taxpayer of the City of Cleveland, Cuyahoga County, Ohio.  In addition, Mr. Wade is a citizen of the state of Maine.

3.     Defendant-Respondent the City of Cleveland is a municipal corporation located within Cuyahoga County, Ohio.

4.     Defendant-Respondent the Cleveland Botanical Garden is a registered corporation for non-profit under the laws of the state of Ohio.  Its principal place of business is located at 11030 East Boulevard, Cleveland, Ohio, 44106.

5.     Defendant-Respondent University Circle Incorporated is a registered corporation for non-profit under the laws of the state of Ohio.  Its principal place of business is located at 10831 Magnolia Drive, Cleveland, Ohio, 44106.

## JURISDICTION AND VENUE

6.     As a party authorized by statute, Mr. Wade is the real party in interest in this action under Rule 17(a)(1)(G) of the Federal Rules of Civil Procedure.

7.     This Court has personal jurisdiction over Defendants-Respondents because of their presence within the state of Ohio.

8.     This Court has subject-matter jurisdiction over Mr. Wade's claims pursuant to 28 U.S.C. § 1332(a) because the parties are completely diverse and the amount in controversy exceeds $75,000 without interest or costs but with the inclusion of attorney's fees.

9. Venue is proper in this district under 28 U.S.C. § 1391(b) because the Defendants-Respondents are residents of the State of Ohio and because the property that is the subject of this action is situated in this district and division.

## ALLEGATIONS

10. Jeptha H. Wade is the grantor of what is now commonly known as Wade Park, which lies within the University Circle neighborhood on the east side of the City of Cleveland.

11. Jeptha Wade was a prominent benefactor of the City of Cleveland (the "City"), and his civic achievements continue to benefit the City to this day. Jeptha Wade co-founded the Case School of Applied Technology (a part of Case Western Reserve University), he helped create the Hathaway Brown School, and he helped establish the Cleveland Museum of Art, the Cleveland Metroparks Zoo, and Lake View Cemetery.

12. Jeptha Wade's passion for the City survives through his namesake and legacy, Wade Park. Through this gift of land to the City, Jeptha Wade recognized the importance of preserving natural, open spaces within the City for all of its residents, not just for the moneyed few.

13. In 1882, Jeptha Wade gifted property to the City by way of the Deed of Wade Park to the City of Cleveland, September 15, 1882, recorded in Cuyahoga County, Vol. 341, pp. 165–67 (the "Wade Grant"). (The Wade Grant is attached hereto as Exhibit A. Note that Exhibit A contains a copy of the Wade Grant as it was recorded in 1882, and, for convenience sake, a full and accurate transcription of the original, hand-written text.)

14. Section 755.19 of the Ohio Revised Code provides that as the owner of property used as a park and that was acquired by deed, the City must manage and administer that property in accordance with the provisions and conditions of such deed.

15.     The Wade Grant requires the City to maintain the land in question as a park "for the benefit of all the people."  (Ex. A, p.165.)  It further provides that the park must be "open at all times to the public," that abutting land owners must be given "free ingress and egress through the [park]," that the land be used "for no other purpose than a public park," and that "[i]f fencing shall ever be placed on said Park grounds, except along the westerly and southerly boundary, it shall be open wrought iron fence."   (Ex. A, p.166.)   Thus, the Wade Grant imposes four conditions on the City: (1) that Wade Park be open at all times to the public; (2) that it be maintained to allow for traversing *through* the park; (3) that it be used for no other purpose than a public park; and (4) that if fenced, it only be done with open, wrought-iron fencing (except on the westerly and southerly boundary).  (These four conditions are collectively referred to herein as the "Wade Conditions.")

16.     The Wade Conditions ensure that all members of the public have the opportunity to freely explore the natural preserve of Wade Park through its paths and walkways.  Ohio Revised Code § 755.19 obligates the City to manage and administer Wade Park in accordance with the Wade Conditions.

17.     Since it received the property by way of the Wade Grant, the City has leased portions of Wade Park to various entities.

18.     In 1964, the City leased a portion of Wade Park to the Garden Center of Greater Cleveland (the "Garden Center") by way of a December 9, 1964 lease, recorded on April 2, 1968, in Cuyahoga County Records Vol. 458, pp. 303–12 (the "1964 Lease").  (The 1964 Lease is attached hereto as Exhibit B.)

19.     The 1964 Lease expressly requires the Garden Center to use the leased premises "for such purposes and such uses only as are consistent with the use of the land as a public park

4

and in full compliance with the covenants of the [City] contained in any deed by which the [City] acquired title to the leased premises . . . and shall in particular make such uses only of the leased premises as are consistent with any conditions, restrictions or limitations and covenants contained in a deed dated September 15, 1882, in which Jeptha H. Wade is the grantor and the City of Cleveland is the grantee, which deed is recorded in Volume 341, page 165, of Cuyahoga County Records."  (Ex. B, p.305–06.)  Thus, the 1964 Lease expressly references the Wade Grant and incorporates the Wade Conditions as specific, independent conditions of that lease.

20.     Additionally, the 1964 Lease expressly provides that "no admission shall be charged for entrance to the garden center itself," except for "special events or fees for the use of facilities."  (Ex. B, p.307.)  It further provides that the Garden Center "will not close or barricade said park or any part thereof except to the extent necessary for its improvement or maintenance." (Ex. B, p.306.)  Defendants-Respondents are violating these express provisions.

21.     The terms of the 1964 Lease were incorporated into and made specific conditions of a Supplemental Indenture of Lease executed between the City and the Garden Center on April 15, 1971, and recorded on December 10, 1997 in Cuyahoga County Records Vol. 97-12785, pp. 9–12 (the "1971 Lease").  (The 1971 Lease is attached hereto as Exhibit C.)  The 1971 Lease is "subject to all of the terms and covenants of" the 1964 Lease.  (Ex. C, p.10.)

22.     On or about January 18, 1994, the Garden Center changed its name to the Cleveland Botanical Garden (the "CBG").

23.     In 2008, the City and the CBG again ratified the Wade Grant and the Wade Conditions in the Second Supplemental Indenture of Lease Agreement, which was executed on December 18, 2008, and recorded on July 16, 2009, in Cuyahoga County Records Doc. No. 200907161035 (the "2008 Lease").  (The 2008 Lease is attached hereto as Exhibit D.)

5

24.     The 2008 Lease expressly references the Wade Grant and incorporates the Wade Conditions by stating that "[o]n September 15, 1882, by Deed filed for record in Volume 341 at Page 165 in the office of the Recorder of Cuyahoga County, Ohio, Jeptha H. Wade conveyed to the City certain promises 'To be used for no other purpose than a Public Park and to be called and known forever by the name of Wade Park' . . . ." (Ex. D, p.1.) The recorded volumes and page numbers of the 1964 Lease and the 1971 Lease are also specifically referenced in the 2008 Lease. (Ex D, p.2.)

25.     The 2008 Lease states that "all terms, covenants, conditions, and provisions contained in the [1964 Lease and the 1971 Lease] shall be and remain unchanged and in full force and effect, the same being in all respects ratified and confirmed by the parties . . . ." (Ex. D, p.3.) It further states that "[a]ll terms, covenants, conditions, and provisions contained in the [1964 Lease, the 1971 Lease, and the 2008 Lease] shall be binding upon, and shall inure to the benefit of, the parties . . . and shall run with the land." (Ex. D, p.3.)

26.     By virtue of the specific provisions within the 1964 Lease, the 1971 Lease, and the 2008 Lease, the Wade Grant and the Wade Conditions explicitly apply to the CBG. However, the CBG is violating the provisions of those leases and of the Wade Grant and the Wade Conditions. Moreover, as is required by O.R.C. § 755.19, the City is obligated to enforce the Wade Conditions on its tenant, the CBG.

27.     In 1971, the City leased a portion of Wade Park known as the Wade Oval to Defendant-Respondent University Circle Incorporated ("UCI"). The Indenture of Lease entered into between the City and UCI on March 16, 1971, was never recorded (the "1971 UCI Lease"). (The 1971 UCI Lease is attached hereto as Exhibit E.)

6

28.     The 1971 UCI Lease expressly references the Wade Grant and incorporates the Wade Conditions by stating that UCI shall only use the property in a manner that is "consistent with any conditions, restrictions or limitations and covenants contained in a deed dated September 15, 1882, in which Jeptha H. Wade is the grantor and the City of Cleveland is the grantee, which deed is recorded in Volume 341, page 165, of Cuyahoga County Records."  (Ex. E, p.2.)

29.     The 1971 UCI Lease additionally requires that the property in question be used "for the purpose only of maintaining a public park, including gardens," upon condition that UCI "shall maintain the Premises in full compliance with the covenants of the [City] contained in any deed by which the [City] acquired title . . . ."  (Ex. E, p.2.)  It further states that "[n]o structure shall be erected above the surface except light poles, fountains and shelters appropriate for park purposes."  (Ex. p.3.)  Defendants-Respondents are violating these express provisions.

30.     Under the 1971 UCI Lease, UCI may assign or sublet property to the CBG, but only if the CBG assumes the obligations of the 1971 UCI Lease.

31.     Subsequent to the 1971 UCI Lease, UCI subleased certain portions of Wade Park to the CBG.  Specifically, the two parties entered into a sublease concerning lighting and irrigation on September 15, 1988 (attached hereto as Exhibit F); an extension of the lighting and irrigation sublease on March 5, 2001 (attached hereto as Exhibit G); a sublease concerning a children's garden on September 2, 1998 (attached hereto as Exhibit H); a sublease concerning a garage on January 23, 2001 (attached hereto as Exhibit I); and a sublease concerning an expanded outdoor garden in 2006 (attached hereto as Exhibit J).  (These subleases are collectively referred to as the "UCI Subleases.")

32.     In each of the UCI Subleases, the CBG assumes the obligations imposed on UCI by the 1971 UCI Lease.  (Ex. F, p.6 (stating that the CBG "hereby assumes all of the obligations of [UCI] under the [1971 UCI Lease] . . . ."); Ex. G, p.1 ("UCI and CBG hereby agree that all terms and conditions of the Sublease shall remain in full force and effect . . . ."); Ex. H, p.1 ("CBG agrees . . . to maintain the Sublease Premises . . . in conformance with any requirements imposed by the City of Cleveland under its lease with UCI."); Ex. I, p.13 (stating that the CBG "shall faithfully observe and comply with . . . all covenants, conditions and restrictions to which the Leased Premises are now subject . . .[and] the terms and provisions of the Lease as they apply to [UCI] . . . ."); Ex. J, p.1 (stating that the CBG "assume[s] the obligations imposed upon UCI by its lease with the City of Cleveland," and that the CBG agrees "to maintain the Sublease Premises . . . in conformance with any requirements imposed by the City of Cleveland under its lease with UCI.").)

33.     By virtue of the specific provisions within the 1971 UCI Lease and the UCI Subleases, the Wade Grant and the Wade Conditions explicitly and independently apply to UCI and the CBG.  However, UCI and the CBG are violating the provisions of those leases and of the Wade Grant and the Wade Conditions.  Moreover, as is required by O.R.C. § 755.19, the City is obligated to enforce the Wade Conditions on its tenants, UCI and the CBG.

34.     All of the leases mentioned herein are valid and binding contracts between the parties.  Alternatively, if said leases are not valid and binding contracts, the equitable doctrine of promissory estoppel requires that they nonetheless be enforced.

35.     Over the last several years, Mr. Wade has worked with the CBG in an attempt to reach a compromise that would commit the CBG to preserving Wade Park in a manner consistent with the Wade Grant.  Despite these efforts, the CBG continues to enclose more and

more of Wade Park with fencing thereby violating the Wade Conditions and limiting public access to Wade Park.

36.     On information and belief, the CBG surreptitiously and fraudulently sought to obtain the approval of the heirs of Jeptha Wade to expand into the whole of the Wade Oval in the future, which would be well beyond the scope of the relevant leases and contrary to the Wade Grant and the Wade Conditions.  Even if these approvals were obtained, they would have no effect on the provisions of the leases or the City's duties under the Ohio Revised Code.

37.     In addition to the violations described above, the CBG and UCI are violating the Wade Grant and the Wade Conditions in the following ways:

a.      Defendants-Respondents restrict access to the grounds of Wade Park through enclosed fencing—the CBG has enclosed nearly all of its leased and subleased portions of Wade Park.

b.      The fencing used by Defendants-Respondents is not limited to open, wrought-iron fencing.

c.      Defendants-Respondents restrict access to the grounds of Wade Park on Mondays when the CBG is closed to the public.

d.      Defendants-Respondents charge admission fees to access the enclosed areas of Wade Park.  The CBG charges admission fees through membership fees or through per-visit fees thereby creating two different classes of visitors: those who pay and trespassers.

e.      Defendants-Respondents use the grounds of Wade Park for purposes other than a public park.

9

38.     Section 733.57 of the Ohio Revised Code and § 88 of the Charter of the City of Cleveland provide that when an obligation of a municipal corporation is being evaded or violated, the city director of law shall apply for the specific performance of that obligation. Obligations of the City are being evaded and violated through Defendants-Respondents' violations of the Wade Grant and the Wade Conditions.

39.     The CBG is in violation of its lease agreements with the City, and UCI is in violation of its lease agreements with the City by permitting the CBG, its subtenant, to violate those lease agreements.

40.     Section 733.59 of the Ohio Revised Code and § 90 of the Charter of the City of Cleveland provide that if the city director of law fails, upon written request by a taxpayer of the municipal corporation, to apply for specific performance under § 733.57, the taxpayer may institute suit in his own name on behalf of the municipal corporation.  Ohio common law additionally authorizes a taxpayer's action.

41.     Mr. Wade is a taxpayer under O.R.C. § 733.59 and § 90 of the Charter of the City of Cleveland and under Ohio common law by virtue of the property taxes that he pays to the City.

42.     Pursuant to the above-cited sections of law, and seeking to enforce the right of the public to enjoy Wade Park regardless of their ability to pay, on June 13, 2013, Mr. Wade, through his counsel, made a written demand upon the Interim Director of Law of the City to immediately file suit to enforce the obligations of the Wade Grant and the Wade Conditions (copy attached hereto as Exhibit K, (attachments removed as the consist of Exhibits A through J to this complaint)).

10

43.     The City's duty to enforce the Wade Conditions under O.R.C. §§ 755.19 & 733.57 exists independently of any consideration of whether the terms of the Wade Grant and Wade Conditions are enforceable by any of the heirs of Jeptha Wade or any other beneficiary under the terms of the Wade Grant.

44.     In spite of Mr. Wade's demand, the Interim Director of Law of the City has failed to file any suit asserting the claims made in Mr. Wade's written request.  In addition, the City has failed to act despite having been given a reasonable time to do so and despite the fact that Defendants-Respondents have a duty to enforce and/or abide by the Wade Grant and the Wade Conditions.  At this point, further requests to the City would be futile.

45.     Mr. Wade has attempted, through counsel, to give security for the costs of this action by depositing such security with this Court.  The Court Clerk has informed Mr. Wade's counsel that it has no authority to receive such security without a court order.  Mr. Wade will file a Motion immediately after filing this complaint, seeking such an order. Mr. Wade is ready and willing to post additional security should the Court determine that it is necessary.

## COUNT I
**(Statutory Taxpayer's Action for Specific Performance and Injunctive Relief)**

46.     Relator incorporates by reference the foregoing paragraphs.

47.     The Ohio Revised Code and the Charter of the City of Cleveland provides relator with the statutory authority to institute this action.

48.     As a direct and proximate result of Defendants-Respondents' evasion and violations, the public, and Mr. Wade as a member of the public, has suffered damages, including but not limited to being arbitrarily excluded from accessing areas of Wade Park and being improperly charged admission.

11

49.     Relator seeks and is entitled to specific performance and preliminary and permanent injunctive relief requiring Defendants-Respondents to comply with the leases, the Wade Grant, and the Wade Conditions.

50.     Relator has no adequate remedy at law—money damages are inadequate—and the public will continue to suffer irreparable harm if specific performance and injunctive relief are not granted.

## Count II
### (Common Law Taxpayer's Action for Specific Performance and Injunctive Relief)

51.     Relator incorporates by reference the foregoing paragraphs.

52.     Ohio common law has long recognized the right of a taxpayer to seek relief from a court of equity independent of a statutory taxpayer's action.

53.     As a direct and proximate result of Defendants-Respondents' evasion and violations, the public, and Mr. Wade as a member of the public, has suffered damages, including but not limited to being arbitrarily excluded from accessing areas of Wade Park and being improperly charged admission.

54.     Relator seeks and is entitled to specific performance and preliminary and permanent injunctive relief requiring Defendants-Respondents to comply with the leases, the Wade Grant, and the Wade Conditions.

55.     Relator has no adequate remedy at law—money damages are inadequate—and the public will continue to suffer irreparable harm if specific performance and injunctive relief are not granted.

WHEREFORE, Plaintiff-Relator William G. Wade, as a taxpayer of the City of Cleveland, prays the Court for an Order as follows:

(a)     That the Defendants-Respondents and all their employees, agents, and representatives be permanently enjoined from taking any action that violates the provisions of the above-referenced leases and the Wade Grant and the Wade Conditions;

(b)     That Plaintiff-Relator be granted a preliminary injunction pending a final decision on the merits to prevent Defendants-Respondents, their employees, agents, or representatives from doing any of the things that the permanent injunction would restrain if granted;

(c)     That the Defendants-Respondents and all their employees, agents, and representatives be required to specifically perform in accordance with the contractual obligations in the above-referenced leases and the Wade Grant and the Wade Conditions;

(d)     That Plaintiff-Relator be awarded attorney's fees and costs of litigation; and,

(e)     All other appropriate relief that Plaintiff-Relator may be entitled to at law or in equity.

Respectfully submitted,

STRAUSS TROY CO., LPA


/s/William K. Flynn
William K. Flynn (0029536)
Matthew W. Fellerhoff (0064005)
Stephen E. Schilling (0086897)
150 East Fourth Street
Cincinnati, OH  45202-4018
Telephone: (513) 621-2120
Facsimile: (513) 629-9426
E-mail: *wkflynn@strausstroy.com*
           *mwfellerhoff@strausstroy.com*
           *seschilling@strausstroy.com*

## JURY DEMAND

Plaintiff-Relator requests a trial by jury on all issues so triable.


/s/ William K. Flynn
William K. Flynn (0029536)

3389551_1.doc