# EXHIBIT I

SUBLEASE AGREEMENT

Between

UNIVERSITY CIRCLE, INCORPORATED
as Landlord

And

CLEVELAND BOTANICAL GARDEN
as Tenant

January 23, 2001

CL:  543449v3

INDEX

                                                                              Page

ARTICLE I          DEFINED TERMS .................................................................2

ARTICLE II         LEASED PREMISES ............................................................5
                   Section 2.1        Leased Premises...................................................5
                   Section 2.2        As-built Survey ...................................................5
                   Section 2.3        Temporary Staging Area ..........................................5

ARTICLE III        TERM OF SUBLEASE ..........................................................5
                   Section 3.1        Basic Term .........................................................5
                   Section 3.2        Early Termination Right ..........................................5

ARTICLE IV         RENT, TAXES AND OTHER CHARGES...............................6
                   Section 4.1        Sublease to Be Net ...............................................6
                   Section 4.2        Basic Rent ..........................................................6
                   Section 4.3        Additional Rent....................................................6
                   Section 4.4        Late Charges and Interest........................................6

ARTICLE V          CONSTRUCTION OF IMPROVEMENTS ...............................6
                   Section 5.1        Obligation to Construct the
                                      Parking Garage Facility............................................6
                   Section 5.2        The Design Development Drawings ......................7
                   Section 5.3        Certificate of Completion .......................................7
                   Section 5.4        Failure to Complete...............................................8
                   Section 5.5        Support; Indemnification ........................................8
                   Section 5.6        Warranty and Quality of Work ...............................8

ARTICLE VI         TITLE TO IMPROVEMENTS ................................................9

ARTICLE VII        PARKING GARAGE FACILITY OPERATING AGREEMENT ..............9

ARTICLE VIII       SURRENDER..........................................................................9
                   Section 8.1        Surrender and Delivery .........................................9
                   Section 8.2        Removal of Personal Property ................................9
                   Section 8.3        Abandonment.....................................................10
                   Section 8.4        Survival ............................................................10

ARTICLE IX         INSURANCE...........................................................................10
                   Section 9.1        Insurance ..........................................................10
                   Section 9.2        Mutual Waiver of Subrogation .............................11

ARTICLE X          QUIET ENJOYMENT..............................................................11

ARTICLE XI          SURFACE USES................................................................11

ARTICLE XII         REPAIRS, REPLACEMENTS AND MAINTENANCE OF THE
                    LEASED PREMISES ........................................................12
                    Section 12.1     Repairs Replacements and Maintenance.............12
                    Section 12.2     Clean and Orderly Condition ...........................12
                    Section 12.3     Protection of Structural Components...................12
                    Section 12.4     Landlord Not Obligated to Provide Utilities.........12

ARTICLE XIII        COMPLIANCE WITH LAWS AND ORDINANCES...........................12
                    Section 13.1     Compliance ..........................................12
                    Section 13.2     Contests.............................................13
                    Section 13.3     Compliance with Prior Subleases,
                                     Lease and Title Covenants ......................13

ARTICLE XIV         CHANGES AND ALTERATIONS........................................14

ARTICLE XV          DISCHARGE OF LIENS .............................................14
                    Section 15.1     No Liens.............................................14
                    Section 15.2     Discharge of Liens ................................14
                    Section 15.3     No Implied Consent ...............................14

ARTICLE XVI         NO WASTE..........................................................15

ARTICLE XVII        USE OF PROPERTY ................................................15
                    Section 17.1     Use ................................................15
                    Section 17.2     Permits for Conduct of Business...................15

ARTICLE XVIII       ENTRY ON LEASED PREMISES .....................................15

ARTICLE XIX         INDEMNIFICATION OF LANDLORD ..................................16
                    Section 19. 1    Indemnification ....................................16
                    Section 19.2     Non-liability of Landlord ..........................17
                    Section 19.3     Environmental Indemnification ....................17
                    Section 19.4     Environmental Reports ............................18

ARTICLE XX          DAMAGE OR DESTRUCTION.........................................18
                    Section 20.1     Damage or Destruction ...........................18

ARTICLE XXI         CONDEMNATION...................................................18
                    Section 21.1     Participation in Proceedings ......................18
                    Section 21.2     Termination.........................................18
                    Section 21.3     Taking of the Whole or Substantially All the
                                     Leased Premises...................................18
                    Section 21.4     Temporary Taking.................................19

Section 21.5    Partial Permanent Taking...............................................19
Section 21.6    Disbursement of Condemnation Proceeds.............19

ARTICLE XXII    ASSIGNMENT AND SUBLEASES.......................................19

ARTICLE XXIII    DEFAULTS ...........................................................................20

ARTICLE XXIV    APPRAISAL ...........................................................................20

ARTICLE XXV    MISCELLANEOUS ................................................................21
Section 25.1    Holdover ...............................................................................21
Section 25.2    No Brokers ...........................................................................21
Section 25.3    Force Majeure .....................................................................21
Section 25.4    Estoppel Certificates .........................................................21
Section 25.5    Invalidity of Particular Provisions ....................................21
Section 25.6    Applicable Law and Construction.......................................22
Section 25.7    Notice ...................................................................................22
Section 25.8    Memorandum of Sublease ..................................................22
Section 25.9    Construction of Terms ........................................................22
Section 25.10     Agreement Binding upon Successors ..................22
Section 25.11    Authority ...............................................................................22
Section 25.12    Survival .................................................................................23
Section 25.13    Complete Agreement ...........................................................23
Section 25.14    Non-waiver ...........................................................................23
Section 25.15    No Third Party Beneficiaries ...............................................23
Section 25.16    Time Is of the Essence ........................................................23
Section 25.17    Exhibits .................................................................................23

## SUBLEASE AGREEMENT

THIS SUBLEASE AGREEMENT ("Sublease") is executed and delivered as of this 23rd day of January, 2001, at Cleveland, Ohio, by and between UNIVERSITY CIRCLE, INCORPORATED, an Ohio nonprofit corporation ( "Landlord") and CLEVELAND BOTANICAL GARDEN, an Ohio nonprofit corporation ("Tenant").

## W I T N E S S E T H:

WHEREAS, the City of Cleveland, Ohio, an Ohio municipal corporation (the "City") is the fee simple owner of certain real property known as Wade Park, which is situated in the City of Cleveland, County of Cuyahoga, State of Ohio, and more particularly described on Exhibit "A" attached hereto and incorporated herein by reference ("Wade Park"); and

WHEREAS, Wade Park was granted to the City by deed from Jeptha Wade dated September 15, 1882 and recorded in Volume 341, Page 195 of Cuyahoga County Records (the "Deed"); and

WHEREAS, the Deed contains certain restrictions and obligations (the "Deed Restrictions"); and

WHEREAS, Landlord has entered into an Indenture of Lease with the City for a portion of Wade Park (the "UCI Land") dated September 28, 1970 (the "Lease"), and

WHEREAS, Landlord and Tenant have previously entered into subleases for portions of the UCI Land (a Sublease dated September 15, 1988 and a Sublease, undated, but notarized on September 2, 1998 and August 20, 1998, collectively referred to herein as the "Previous Subleases"); and

WHEREAS, subject to and in accordance with the terms and provisions hereinafter set forth, Landlord desires to sublease to Tenant and Tenant desires to sublease from Landlord a specific portion of the UCI Land more specifically described on Exhibit B attached hereto and made a part hereof (the "Leased Premises") upon terms and conditions set forth herein.

NOW, THEREFORE, in consideration of the premises and covenants contained herein, the parties hereby agree as follows:

CL:  543449v3

# ARTICLE I

## DEFINED TERMS

Unless the context of this Sublease otherwise requires, the terms defined in this Article I shall have, for all the purposes of this Sublease, the following respective meanings:

(1)    "Additional Rent" shall mean all sums, costs, Taxes, expenses and other payments which Tenant, in any of the provisions of this Sublease, agrees to pay directly to Landlord.

(2)    "As-Built Survey" shall have the meaning set forth in Section 2.2 hereof.

(3)    "Basic Term" shall mean the period of time as defined and set forth in Section 3.1 hereof.

(4)    "Date of this Sublease" shall mean the date set forth at the beginning of this Sublease in the first paragraph hereof.

(5)    "Default Interest Rate" shall mean a rate equal to two percent (2%) above the prime rate, as announced by any bank of Tenant's choosing or its successor from time to time, as determined as of the first day of each month.

(6)    "Design Development Drawings" shall mean architectural drawings and specifications prepared by or for Tenant and approved by both Landlord and the City as provided in Article V hereof, so as to provide specific definition of the architectural, structural and service components of the Parking Garage Facility, together with materials and other design and aesthetic details (including, without limitation, specific treatment of the relocation of the sewer line currently crossing the Leased Premises and the UCI Land and the plans for restoration of the lands effected by such relocation).

(7)    "Environmental Law(s)" means each and every law, statute, ordinance, regulation, rule, judicial or administrative order or decree, permit, license, approval, authorization or similar requirement of each and every federal, state and local governmental agency or other governmental authority relating to any Hazardous Substances, including but not limited to the Clean Water Act, the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended, the Hazardous Materials Transportation Act, the Resource Conservation and Recovery Act, the Hazardous Substances Account Act, the Hazardous Substances Act, and the Underground Storage Tank Act of 1984.

(8)    "Force Majeure" shall mean acts of God; acts of public enemies; orders or restraints of any kind of the government or any governmental agency of the United States of

CL:  543449v3                                2

America or of the State or any of their departments, agencies, political subdivisions or officials, or of any local municipal authority, or of any civil or military authority; explosions; insurrections; civic disturbances; riots; landslides; earthquakes; storms with winds in excess of 75 m.p.h.; hurricanes; tornados and floods.

(9)     "Hazardous Substance(s)" means any substance, material, condition, mixture or waste which is now or hereafter (a) defined as a "hazardous waste," "hazardous material," "hazardous substance," "extremely hazardous waste," or "restricted hazardous waste" under any provision of the state, federal or other applicable law; (b) classified as radioactive materials; (c) designated as a "hazardous substance" pursuant to Section 311 of the Clean Water Act, 33 U.S.C. Section 1251 et seq. (33 U.S.C. Section 1321) or listed pursuant to Section 307 of the Clean Water Act (33 U.S.C. Section 1317); (d) defined as a "hazardous waste" pursuant to the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901 et seq. (42 U.S.C. Section 6903); (e) defined as a "hazardous substance" pursuant to Section 101 of the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.C.S. Section 9601 et seq. (42 U.S.C. Section 9601); (f) determined to be a "hazardous chemical substance or mixture" pursuant to the Toxic Substances Control Act, 15 U.S.C. Section 2601 et seq. (15 U.S.C. Section 2605); (g) identified for remediation, storage, containment, removal, disposal or treatment in any City plan for the Plan Area; or (h) determined by the state, federal or local governmental authorities to pose or be capable of posing a risk of injury to human health, safety or property (including but not limited to petroleum and petroleum byproducts; asbestos, polychlorinated biphenyls, polynuclear aromatic hydrocarbons; cyanide; lead; mercury; acetone, styrene; and "hazardous air pollutants" listed pursuant to the Clean Air Act 42 U.S.C. Section 7412.

(10)    "Improvements" shall mean the portion of any buildings, structures and other fixtures that may be constructed on the leased premises pursuant to Article V of this Sublease (including the Parking Garage Facility and ancillary improvements thereto) and any replacements, alterations and additions thereto.

(11)    "Leasehold Estate" shall mean the Tenant's interest in the Leased Premises and this Sublease.

(12)    "Lease Year" shall mean each full or partial calendar year during the Term of the Sublease and all monetary obligations under this Sublease shall be prorated accordingly.

(13)    "Parking Garage Facility" shall mean the Parking Garage consisting of a minimum together with any additions and improvements thereto and/or reconstructions thereof, to be constructed on the Leased Premises.

(14)    "Person" shall mean a natural person or persons, a partnership, a corporation, a limited liability company, and/or any other form of business association or business entity.

(15)    "Project Architect" shall mean a licensed architect selected by Tenant for the Parking Garage Facility Project.

(16)    "Rent" shall mean Basic Rent and Additional Rent, if any.

(17)    "Restore" or "Restoration" shall mean either: (i) the repair, replacement and rebuilding of any Improvements which have been damaged by casualty or taken in part by condemnation, or (ii) the razing and removal from the Leased Premises of the Improvements which have been damaged by casualty or taken in part by condemnation so that the Leased Premises are restored to their condition, grade and appearance prior to the construction of said Improvement thereon, free of debris and in a clean and sightly condition in compliance with all laws, ordinances and regulations.

(18)    "Sublease" shall mean this Sublease and any and all amendments or modifications of this Sublease.

(19)    "Substantial Completion" shall mean substantial completion of the Parking Garage Facility in conformance with the Design Development Drawings and issuance by the City of a Certificate of Occupancy therefor.

(20)    "Surveyor" shall mean a licensed and professional surveyor chosen by Tenant.

(21)    "Tax" or "taxes" shall mean all real estate taxes, payments in lieu of taxes, personal property taxes, privilege taxes, admissions taxes, excise taxes, business and occupation taxes, parking operation taxes, gross sales taxes, occupational license taxes, water charges, sewer charges, rates and charges, levies, license and permit fees, assessments (including, but not limited to, assessments for public improvements or benefits) and all other governmental impositions and charges of every kind and nature whatsoever, whether or not now customary or within the contemplation of the parties hereto and regardless of whether the same shall be extraordinary or ordinary, general or special, unforeseen or foreseen, or similar or dissimilar to any of the foregoing.

(22)    "Temporary Staging Area" shall mean (i) certain area bordering the Leased Premises to be used by Tenant for construction of the Parking Garage Facility during the Temporary Staging Area Term, and (ii) certain area including and surrounding the sewer line crossing the Leased Premises and the UCI Land (including the area including and surrounding the proposed site for relocation thereof) which sewer line will need to be relocated in connection with the construction of the Parking Garage Facility; both of which areas are designated on Exhibit C attached hereto.

(23)    "Temporary Staging Area Term" means the time periods shown on Exhibit C attached hereto as applicable to the construction of the Parking Garage Facility and the relocation of the sewer line, respectively.

4

(24)    "Tenant's Agents" shall mean the employees, servants and agents of the Tenant.

(25)    "Term" shall mean the Basic Term of the Sublease as defined in Article III hereof.

ARTICLE II

LEASED PREMISES

SECTION 2.1 - LEASED PREMISES.  Landlord hereby subleases to Tenant and Tenant hereby subleases from Landlord, in its "AS IS" condition, TO HAVE AND TO HOLD, on the terms and conditions and for the purposes herein set forth, the Leased Premises.

SECTION 2.2 - AS-BUILT SURVEY.  Upon Substantial Completion, Tenant shall cause the Surveyor to deliver an ALTA/ACSM as-built survey (the "As-Built Survey") certified to the City, Landlord, and Tenant, which shall depict the location of the Improvements constructed by Tenant on the Leased Premises.

SECTION 2.3 - TEMPORARY STAGING AREA.  Landlord hereby subleases to Tenant and Tenant hereby subleases from Landlord, in its "AS IS" condition, TO HAVE AND TO HOLD, on the terms and conditions and for the purposes herein set forth, the Temporary Staging Area for the Temporary Staging Area Term.   Tenant hereby agrees and covenants to restore the Temporary Staging Area free of debris and in the condition, grade and appearance as approved by Landlord in the Design Development Drawings.

ARTICLE III

TERM OF SUBLEASE

SECTION 3.1 - BASIC TERM.  The Basic Term of this Sublease shall commence on the Commencement Date and terminate on December 31, 2068.

SECTION 3.2 - EARLY TERMINATION RIGHT.  Notwithstanding any provision in this Article III to the contrary and in addition to Landlord's rights set forth in Article XXIII hereof, Landlord may at its option terminate this Sublease prior to the end of the Basic Term by written notice to Tenant, in the event the start of construction of the Parking Garage Facility has not occurred on or before December 31, 2001 or Substantial Completion of the Parking Garage Facility does not occur by December 31, 2004.

ARTICLE IV

RENT, TAXES AND OTHER CHARGES

SECTION 4.1 - SUBLEASE TO BE NET.  This Sublease is what is commonly denominated a "net, net, net" lease.  Landlord and Tenant intend that, except as herein otherwise provided, all costs, charges, expenses and obligations of every kind and nature whatsoever relating to the use, occupancy, repair and maintenance of the Leased Premises and the Improvements, including but not limited to, utility charges and expenses, insurance, maintenance, replacements, rehabilitation, Restoration and repairs, which may arise or become due during the Term shall be paid by Tenant, and except for that which is owed due to Landlord's negligence, Tenant hereby agrees to indemnify and save Landlord harmless from and against the same.

SECTION 4.2 - BASIC RENT.  Tenant shall pay Landlord, in advance, as rental for the Leased Premises, One Dollar ($1.00) per calendar year.  Basic Rent shall be payable to the Landlord on the first day of each calendar year commencing on January 1, 2001, at the notice address set forth in Section 25.7 hereof, or to such other payee or address as Landlord may hereafter designate in writing to Tenant.

SECTION 4.3 - ADDITIONAL RENT.  In addition to the Basic Rent provided for in Section 4.2 hereof, Tenant shall also pay without notice or demand, without abatement, deduction or set-off, as Additional Rent, all sums costs, expenses and other payments which Tenant under any of the provisions of this Sublease assumes or agrees to pay to Landlord.  In the event of any nonpayment thereof when due, Landlord shall have (in addition to all other rights and remedies) all the rights and remedies provided for herein or by law in the case of nonpayment of the Basic Rent.

SECTION 4.4 - LATE CHARGES AND INTEREST.  In addition to Landlord's rights pursuant to Article XXIII, if any payments of the Additional Rent under this Sublease are not made within thirty (30) days after past due notification is received by Tenant, then Tenant shall pay upon demand of Landlord an additional amount ("Default Interest") equal to the Default Interest Rate accruing on the unpaid sum until paid.  Default interest shall accrue only from the date of delinquency or advancement, as the case may be.

ARTICLE V

CONSTRUCTION OF IMPROVEMENTS

SECTION 5.1 - OBLIGATION TO CONSTRUCT THE PARKING GARAGE FACILITY.  Tenant shall cause the construction of the Parking Garage Facility (and relocation of the sewer line necessitated in connection therewith) in accordance with final plans and specifications which shall substantially conform to the Design Development Drawings, as the same may be changed from time to time in accordance with Section 5.2.  The Tenant shall use its best efforts to achieve Substantial Completion of the Parking Garage Facility in accordance with the time frames set forth on the Construction Schedule attached hereto as Exhibit D as may be changed from time to time by the

mutual agreement of the Landlord and the Tenant and shall be extended for the period of time required to obtain City approval of Design Development Drawings beyond the originally scheduled date.

SECTION 5.2 - THE DESIGN DEVELOPMENT DRAWINGS.  Prior to the commencement of any construction work on the Parking Garage Facility and within the time table set forth in the Construction Schedule, Tenant shall provide the Landlord and the City with copies of proposed Design Development Drawings and Tenant shall not commence any construction work on the Parking Garage Facility prior to obtaining the Landlord's and the City's written approval of the same.  Tenant agrees to design and build the parking garage in a manner that facilitates a possible future underground connection with parking facilities on adjacent properties and agrees to cooperate with Landlord in efforts to develop such a connection.

(a)     Procedures for Changes.  Tenant agrees that once the Landlord and the City approve the Design Development Drawings for the Parking Garage Facility, if Tenant desires to make any Material Changes (as hereinafter defined) in the Design Development Drawings, or if the final drawings for construction do not substantially conform to the approved Design Development Drawings, Tenant shall submit proposed changes in the Design Development Drawings to the Landlord and to the City for review and approval.  Any proposed Material Change shall be deemed approved unless rejection thereof, in whole or in part, by written notice thereof by Landlord and/or by the City to Tenant, setting forth in detail the reasons therefor, is made within forty-five (45) days of the submission, provided Tenant agrees to pay any excess amount caused by the changes. Tenant may then within thirty (30) days submit a new or corrected proposed change for approval.  No approval given by Landlord and the City hereunder shall relieve Tenant from compliance with state and local laws in the construction of the Improvements.

For purposes of this Section 5.2, Material Change shall mean any of the following:

(a)     alteration of the primary use of the Parking Garage Facility;

(b)     any substantial change to the building materials or any change to the exterior building envelope of the Parking Garage Facility in an amount equal to or greater than $500,000.00;

(c)     any substantial change in the design concept in the case of landscaping, lighting and signage.

SECTION 5.3 - CERTIFICATE OF COMPLETION.  Promptly after the issuance of a final Certificate of Occupancy pursuant to the Building Code of the City of Cleveland for the Parking Garage Facility, Tenant shall obtain a Certificate of Completion from the Project Architect which shall constitute (and shall so state) a conclusive determination that the Parking Garage Facility was constructed in compliance with the Design Development Drawings. If the Project Architect shall refuse or fail to cause to be provided the final Certificate of Completion in accordance with the provisions of this Section, the Project Architect shall provide the Tenant with a written statement, indicating in adequate detail in what respect the Parking Garage Facility is not in compliance with

7

the Design Development Drawings and what measures or acts must, in the opinion of the Project Architect, be taken or performed in order to obtain such certificate.

SECTION 5.4 - FAILURE TO COMPLETE.  If this Sublease shall terminate prior to the Substantial Completion of Parking Garage Facility within the timeframe established in Section 3.2, then Landlord shall have the right, in addition to Landlord's rights pursuant to Article III and XXIII, upon written notice to Tenant, to require Tenant, at the sole cost of Tenant, to remove all Improvements or portions thereof on the Leased Premises and to Restore the Leased Premises as nearly as practical to its original condition.

SECTION 5.5 - SUPPORT; INDEMNIFICATION.  To the extent that it is consistent with construction industry standards, during the excavation and/or construction of the Improvements or any repairs, Restoration or alterations thereto or replacements thereof, Tenant shall provide lateral and sub-adjacent support to adjacent properties and any improvements whatsoever upon said properties.  Except for that which is caused by Landlord's negligence, Tenant shall further indemnify and hold harmless Landlord from and against any and all damages, liabilities, obligations, penalties, claims, costs, charges and expenses, including architects' and attorneys' fees, which may be suffered or incurred by or imposed upon Landlord by reason of such excavation and construction and/or Tenant's failure to provide such support.

SECTION 5.6 - WARRANTY AND QUALITY OF WORK.  Any work done in, on or through the Leased Premises (including any excavation work) or any renovation, rehabilitation, Restoration or repair thereto shall be done in a good and workmanlike manner in accordance with the Design Development Drawings, free from faults and defects and in compliance with the applicable building and zoning laws and with all laws, ordinances, orders and requirements of all governmental authorities and the appropriate departments, commissions, boards and officers thereof. Tenant, at its sole cost and expense, shall file, or cause its contractors to file, with the appropriate governmental agency having jurisdiction with respect to the work being performed on the Leased Premises, complete plans, specifications, certificates and any other documents required for such work and Tenant shall procure and pay for, or cause its contractors to procure and pay for, so far as the same may be required, from time to time all local and other governmental permits and authorizations of the various state and local departments and governmental agencies having jurisdiction.  Tenant shall indemnify and hold Landlord harmless from and against any and all costs and expenses, including attorneys' fees, in connection with the performance of the work on the Leased Premises. To the extent available in accordance with usual and customary industry standards and practices, Tenant shall obtain written warranties and/or guaranties (for a period of not less than one (1) year) from any contractor, subcontractor, supplier or materialman performing work at the Leased Premises.

## ARTICLE VI

### TITLE TO IMPROVEMENTS

Title to the Parking Garage Facility and the Improvements shall vest in the Tenant as the Parking Garage Facility and Improvements are being constructed and shall remain in Tenant, its successors and permitted assigns, until the termination of this Sublease, by expiration of the Term or otherwise. Subject to the provisions of Sections 3.2, upon such termination, title to the portion of the Parking Garage Facility and Improvements that are on the Leased Premises shall automatically vest in Landlord as provided in Article VIII hereof.

## ARTICLE VII

### PARKING GARAGE FACILITY OPERATING AGREEMENT

Upon Substantial Completion of the Parking Garage Facility, Tenant shall enter into a Parking Garage Facility Operating Agreement with Landlord. Tenant understands that it is constructing a parking facility that will service Tenant needs and the parking needs of neighboring institutions. Tenant agrees to collaborate with Landlord in using the Parking Garage Facility to best meet these needs.

## ARTICLE VIII

### SURRENDER

SECTION 8.1 - SURRENDER AND DELIVERY. On the last day of the Term or upon any earlier expiration or termination of this Sublease, Tenant shall surrender the Leased Premises and Improvements to the possession and use of Landlord without fraud or delay and in good order, condition and repair, except for reasonable wear and tear after the last necessary repair, replacement or Restoration made by Tenant, pursuant to its obligations hereunder, free and clear of all lettings and occupancies and free and clear of all liens and encumbrances created by Tenant without any payment or allowance whatever by Landlord on account of any Improvements which may be on the Leased Premises. Upon the expiration or earlier termination of this Sublease, fee simple title to the Improvements shall be deemed vested in Landlord, and Tenant agrees to execute any and all documents necessary to confirm such title in the name of Landlord.

SECTION 8.2 - REMOVAL OF PERSONAL PROPERTY. Where furnished by or at the expense of Tenant, furniture, trade fixtures and business equipment not an integral part of the operating equipment of the Parking Garage Facility may be removed by Tenant at or prior to the expiration or termination of this Sublease, provided that the removal thereof will not damage the structural integrity of the Leased Premises or of the Improvements or necessitate changes in or repairs to the same. Tenant shall pay or cause to be paid promptly to Landlord the cost of repairing any physical damage arising from such removal from the Leased Premises or the Improvements and shall pay or cause to be paid promptly to the Landlord the cost of Restoring the Leased Premises and the Improvements to their condition prior to such removal.

SECTION 8.3 - ABANDONMENT.  Any personal property of Tenant or any subtenant which shall remain in the Improvements or on the Leased Premises more than thirty (30) days after the termination or earlier expiration of this Sublease may, at the option of Landlord, be deemed to have been abandoned by Tenant or such subtenant.  The abandoned property may either be retained by Landlord as its property, be disposed of, without accountability, in such manner as Landlord may see fit, or if Landlord shall give written notice to Tenant to such effect such property shall be removed by Tenant at Tenant's sole cost and expense within a reasonable time after termination of this Sublease.  During this period, Landlord shall not be responsible for any loss or damage occurring to any such property owned by Tenant.

SECTION 8.4 - SURVIVAL. The provisions of this Article shall survive any termination or earlier expiration of this Sublease.

ARTICLE IX

INSURANCE

SECTION 9.1 - INSURANCE.

(a)    Hazard Insurance.  At all times during possession of the Leased Premises by Tenant pursuant to the provisions of this Sublease, Tenant, at its sole cost and expense, shall maintain the insurance described below for the mutual benefit of Landlord, Tenant and the City as their respective interests may appear against the following risks (the insurance in this Section 9.1(a) being sometimes collectively described as "hazard insurance").  Tenant shall insure the Leased Premises and the Improvements against loss or damage.

(b)    Public Liability Insurance.  At all times during the possession of the Leased Premises by Tenant pursuant to the provisions of this Sublease, Tenant shall maintain the insurance described below and name the Landlord and the City as additional insured.  Tenant shall insure, in one or more policies which may be primary and umbrella type policies, against all claims for personal injury or death or property damage occurring in or on the Leased Premises and the Improvements with limits not less than One Million Dollars ($1,000,000) in the event of bodily injury or death of one person, and not less than Two Million Dollars ($2,000,000) in the event of bodily injury or death to any number of persons in any one occurrence, and broad form property damage coverage of not less than Two Million Dollars ($2,000,000).

(c)    Builder's Risk Insurance.  During initial construction, reconstruction, Restoration, renovation or rehabilitation of any Improvements on the Leased premises, Tenant shall procure and maintain or cause its contractors or agents to procure and maintain, all risk builders' risk and fire insurance with extended coverage upon the Improvements on the Leased Premises then to be constructed on a completed value basis, endorsed to protect the interest of City, Landlord, Tenant and Tenant's general contractor, as their respective interests may appear.

Tenant shall provide Landlord written notice of any loss resulting in damage or destruction exceeding One Hundred Thousand Dollars ($100,000.00) to the Leased Premises or Improvements.

SECTION 9.2 - MUTUAL WAIVER OF SUBROGATION. Neither Landlord nor Tenant nor its respective representatives or employees shall be liable to the other party or to anyone claiming through the other party or to any insurance company (by way of subrogation or otherwise) insuring the other party for any loss or damage to any Improvement or injury to or death of persons occurring on or about the Leased Premises or in any manner growing out of or connected with use or occupation of the Leased Premises, or the use or occupation of the Leased Premises by Tenant's agents, employees, representatives, visitors or guests even though such loss, damage, injury or death might have been occasioned by the negligence of such party, its agents or employees, (i) to the extent that such loss, damage, injury or death is or could be covered by standard Special Form insurance policy, by a contents insurance policy or by a sprinkler leakage or water damage policy in Ohio, regardless of whether such insurance policies are actually carried, or (ii) to the extent of recovery under any other insurance carried covering such loss, damage, injury or death.

## ARTICLE X

## QUIET ENJOYMENT

Upon all rents and charges to be paid by Tenant as herein provided, and observing and keeping all covenants, agreements and conditions of this Sublease on Tenant's part to be kept, Tenant shall quietly have and enjoy the Leased Premises during the Term without hindrance, interference or molestation of any sort by anyone claiming by, through or under Landlord, subject to the terms and conditions of this Sublease.

## ARTICLE XI

## SURFACE USES

Notwithstanding anything to the contrary contained herein, the parties acknowledge and agree that the surface of the Leased Premises shall at all times be used and maintained for public park uses as part of the "grand lawn" of Wade Park and, upon Substantial Completion of the Parking Garage Facilities, the Landlord shall become responsible for the maintenance and control thereof as part of its management, maintenance and control of the remainder of the "grand lawn".

## ARTICLE XII

## REPAIRS, REPLACEMENTS AND MAINTENANCE OF THE LEASED PREMISES

SECTION 12.1 - REPAIRS, REPLACEMENTS AND MAINTENANCE. Throughout the Term, Tenant, at its sole cost and expense, shall take good care and provide routine maintenance of the Leased Premises and Improvements and shall keep the same in good order and condition, except for reasonable wear and tear after the last necessary repair, replacement or Restoration made by Tenant pursuant to its obligations hereunder. All repairs, maintenance, replacements, Restorations or renovations made by Tenant shall be at least reasonably equivalent in quality, workmanship and class to the original work.

SECTION 12.2 - CLEAN AND ORDERLY CONDITION. Subject to the terms and conditions of the Parking Garage Facility Operating Agreement, Tenant shall keep and maintain all portions of the Leased Premises and the Improvements in a clean safe and orderly condition, free of unreasonable accumulations of dirt, rubbish, snow, ice and unlawful obstructions, and shall put, keep and maintain all portions of the Leased Premises maintained on a rigorous maintenance schedule and routine so as to maintain the integrity of the Parking Garage Facility. Tenant agrees to arrange and pay for Parking Garage Facility inspections in a manner and frequency that is customary for similar facilities. Upon request from Landlord, Tenant agrees to provide a copy of said inspection reports to Landlord.

SECTION 12.3 - PROTECTION OF STRUCTURAL COMPONENTS. Tenant shall do or cause others to do all necessary shoring of foundations, footings, walls and other structural components of the Improvements and shall do every other act or thing for the safety and preservation thereof which may be necessary by reason of any excavation, building, operation or other activity by the Tenant upon any property or street or walkway in the immediate vicinity of the Leased Premises.

SECTION 12.4 - LANDLORD NOT OBLIGATED TO PROVIDE UTILITIES. Except for what otherwise may be agreed to by Landlord and Tenant, Landlord shall not be required to furnish to Tenant any utility facilities or services of any kind whatsoever during the Term, such as, but not limited to, water, steam, heat, gas, hot water, chilled water, electricity, telecommunications, light and power, or to make any alterations, rebuildings, replacements, changes, additions, improvements, maintenance, renovations or repairs during the Term of this Sublease.

## ARTICLE XIII

## COMPLIANCE WITH LAWS AND ORDINANCES

SECTION 13.1 - COMPLIANCE. Throughout the Term, Tenant shall, at its sole cost and expense, promptly observe and comply with all present and future laws, ordinances, orders, rules, directives, regulations and requirements of all federal, state and local governments,

departments, commissions, boards and officers, which may be applicable to the Leased Premises or Improvements or to the use or manner of use of the Leased Premises or the Improvements or the owners, tenants or occupants thereof, whether or not such law, ordinance, order, rule, regulation or requirement shall affect the interior or exterior of the Improvements on the Leased Premises, necessitate structural changes or improvements or interfere with the use and enjoyment of the Leased Premises or Improvements and whether or not such compliance is required by reason of any condition, event or circumstance existing prior to or after the date of this Sublease ("Applicable Laws"). Tenant shall not do or permit anything to be done on or about the Leased Premises which would in any way conflict with any Applicable Laws, or use or allow the Leased Premises to be used for any improper, immoral or unlawful purpose. Except for that which is caused by Landlord's negligence, Tenant agrees to indemnify, save and hold harmless Landlord from any liabilities, cost, expenses, including, but not limited to, attorneys fees, associated or incurred by Landlord by any claim, action, suit, or cost arising under, pursuant to, or as a result of Tenant's violation of any Applicable Laws.

SECTION 13.2 - CONTESTS. Tenant shall have the right, after prior written notice to Landlord, to contest by appropriate legal proceedings diligently prosecuted, at Tenant's sole cost and expense, the validity or application of any law. Such legal proceedings shall include any and all appeals and other proceedings, and appeals from orders, judgments or decrees so long as the same are sufficient to prevent a foreclosure sale. Tenant shall conduct all such proceedings at its cost and expense, and if legally required in the name of the Landlord, and Landlord shall execute all documents necessary to accomplish the foregoing. Landlord may, on reasonable notice to Tenant, pay such contested item or items if the protection of the Leased Premises or Improvements or of Landlord's interest therein shall, in the reasonable judgment of Landlord require such payment. Landlord shall not be required to join in any proceedings referred to herein unless the provisions of any law, rule or regulation at the time in effect shall require that such proceedings be brought by or in the name of Landlord and said proceeding is in the best interests of Landlord, in which event Landlord shall join in such proceedings or permit the same to be brought in its name. Landlord shall not ultimately be subject to any liability for the payment of any costs or expenses in connection with any such proceedings, and except for that which is caused by Landlord's negligence, Tenant shall indemnify and save harmless Landlord from any such costs and expenses.

SECTION 13.3 - COMPLIANCE WITH PRIOR SUBLEASES, LEASE AND TITLE COVENANTS. Tenant, at its sole cost and expense, shall faithfully observe and comply with (i) all covenants, conditions and restrictions to which the Leased Premises are now subject, including the Deed Restrictions, (ii) the terms and provisions of the Lease as they apply to the Landlord, and (iii) all of the terms and provisions set forth in the Previous Subleases applicable to Tenant.

## ARTICLE XIV

### CHANGES AND ALTERATIONS

Except as otherwise provided in this Sublease, during the Term no material changes, alterations, modifications or additions to the exterior or the interior of the Improvements or to the Leased Premises shall be undertaken by Tenant without Landlord's prior written consent.

## ARTICLE XV

### DISCHARGE OF LIENS

SECTION 15.1 - NO LIENS.  Subject to Tenant's rights to contest as set forth below and in Article XIII and except for any such liens, encumbrances or charges made against the Leased Premises by or through the acts or omissions of Landlord, Tenant shall not create or permit to be created or to remain, and shall discharge any mechanics', laborers' or materialmen's liens or any conditional sale, title retention agreement or chattel mortgage, which might be or become a lien, encumbrance or charge upon the Leased Premises or Improvements or any part thereof having any priority or preference over or ranking on a parity with the estate, rights and interest of Landlord in the Leased Premises or Improvements or any part thereof.

SECTION 15.2 - DISCHARGE OF LIENS.  If any mechanics', laborers' or materialmen's liens shall at any time be filed against the Leased Premises or Improvements or any part thereof except for any such liens, encumbrances or charges made against the Leased Premises by or through the acts or omissions of Landlord in the construction of the Landlord?, Tenant, within ninety (90) days after notice of the filing, shall cause the same to be discharged of record by payment, deposit, bond, order of a court of competent jurisdiction or otherwise; provided, however, that Tenant shall have the right to contest the validity of any such lien in any manner permitted by law.  In the event of any such contest, upon the resolution thereof, Tenant shall thereafter diligently proceed to cause such lien to be removed and discharged.  If Tenant shall fail to discharge or to contest any such lien, then, in addition to any other right or remedy Landlord, after ninety (90) days notice to Tenant, may, but shall not be obligated to, discharge the same either by paying the amount claimed to be due or by procuring the discharge of such lien by deposit or bonding proceedings.  In any such event, Landlord shall be entitled, if Landlord so elects, to compel the prosecution of an action for the foreclosure of such lien by the lienor and if such foreclosure is successful to pay the amount of the judgment in favor of the lienor with interest, costs and allowances.  Any reasonable amount so paid by Landlord and all reasonable costs and expenses, including attorneys' fees, incurred by Landlord in connection therewith, together with interest thereon at the Default Interest Rate from the respective dates of Landlord's payment of the cost and expense, shall constitute Additional Rent, payable by Tenant under this Sublease, and shall be paid by Tenant to Landlord upon receipt by Tenant of Landlord's demand for payment and supporting documentation of costs.

SECTION 15.3 - NO IMPLIED CONSENT.  Nothing in this Sublease shall be deemed or constructed in any way as constituting the consent or request of Landlord, express or implied by

inference or otherwise, to any contractor, subcontractor, laborer or materialman for the performance of any labor or the furnishing of any materials for any specific improvement, alteration to or renovation, rehabilitation, Restoration or repair of the Leased Premises or Improvements or any part thereof.

## ARTICLE XVI

## NO WASTE

Tenant shall not do or suffer any waste in any respect to the Leased Premises or Improvements or any part thereof.

## ARTICLE XVII

## USE OF PROPERTY

SECTION 17.1 - USE.  Tenant shall use the Leased Premises and Improvements for the operation of a parking garage and the surface area is to be maintained for public park uses in accordance with the Design Development Drawings.  Tenant shall not knowingly use or allow the Leased Premises or Improvements to be used (i) in contradiction to the Deed Restrictions or (ii) for any unlawful purpose or in material violation of any certificate of occupancy covering or affecting the use of the Leased Premises or Improvements or any part thereof, or which in law, constitutes a nuisance, public or private, or would make void or voidable any insurance then in force with respect thereto.

SECTION 17.2 - PERMITS FOR CONDUCT OF BUSINESS.  Subject to the terms and conditions of the Parking Garage Facility Operating Agreement, Tenant shall, at its sole cost and expense, obtain from all authorities having jurisdiction over the business and operation of Tenant on the Leased Premises all licenses, certificates, permits or other authorizations which may be lawfully required for the conduct of its business and operation or necessary to comply with the requirements of this Sublease or in the exercise of any right or obligation granted herein.

## ARTICLE XVIII

## ENTRY ON LEASED PREMISES

Tenant shall permit Landlord and Landlord's Agents to enter the Leased Premises and the Improvements thereon at all reasonable times upon reasonable notice for the purpose of inspecting the same, and upon such notice as is applicable in each case, for the purpose of exercising any other rights or remedies of Landlord under this Sublease.  Reasonable notice is not required in the event of an emergency.  Nothing herein shall imply any duty upon the part of Landlord to so inspect the Leased Premises or Improvements, or to do any repairs or work that any such inspection may disclose to be necessary, and no exercise or failure by Landlord to exercise any rights or remedies under this Sublease shall constitute a waiver of any such right or remedy or of Tenant's default, if any, in connection therewith.

## ARTICLE XIX

### INDEMNIFICATION OF LANDLORD

SECTION 19. 1 - INDEMNIFICATION. Except for that which is caused by Landlord's negligence, Tenant shall, at its sole cost and expense, indemnify and save harmless Landlord from and against any and all liabilities, obligations, judgments, damages, penalties, claims, demands, suits, actions, costs, charges, losses, and expenses including architects' and attorneys' fees, which may be imposed upon or incurred by or asserted by or on behalf of any person against Landlord by reason of any of the following occurrences during the Term or the Temporary Staging Area Term:

(a)     Any work done in, on or about the Leased Premises, the Temporary Staging Area or Improvements or any part thereof by Tenant, Tenant's Agents, subtenants, Tenants, invitees, licensees or customers in their capacity as such;

(b)     Any use, non-use, possession, occupation, condition, operation, repair, replacement, renovation, reconstruction or maintenance of or activity in, on or about the Leased Premises the Temporary Staging Area during the Temporary Staging Area Term of this Sublease or Improvements or any part thereof by Tenant or Tenant's Agents;

(c)     Any wrongful or negligent act or omission in, on or about the Leased Premises or Improvements or in connection with the operation thereof, on the part of Tenant, Tenant's Agents, subtenants, Tenants, licenses, customers or invitees other than Landlord (or its contractors, agents, servants or employees in their capacity as such);

(d)     Any accident, injury or damage to any person or property occurring in, on or about the Leased Premises, the Temporary Staging Area during the Temporary Staging Area Term of this Sublease or Improvements or any part thereof by Tenant or Tenant's Agents; or

(e)     Any breach, violation, non-performance or failure on the part of Tenant to perform or comply with any of the covenants, agreements, terms, provisions, conditions or limitations contained in this Sublease on Tenant's part to be fulfilled, kept, observed, performed or complied with.

In case any action or proceeding is brought against Landlord by any person other than Tenant or Tenant's Agents, by reason of any such occurrence, Tenant, upon written notice from Landlord, shall at Tenant's sole cost and expense resist or defend such action or proceedings.

SECTION 19.2 - NON-LIABILITY OF LANDLORD.  To the extent allowable by law, Landlord, in its capacity as a sublessor, shall not be responsible or liable to Tenant, or any person, firm or corporation claiming by, through or under Tenant for, or by reason of, any injury or damage occurring during the Term to the Improvements or any equipment, machinery or apparatus or appliances in the Improvements or of any failure or defect of water, chilled water, heat, electric light or power supply, or of any apparatus or appliance in connection therewith, or for any injury or loss or damage to person or property resulting therefrom and Landlord shall not be responsible or liable to Tenant, or any person, firm or corporation claiming by, through or under Tenant, for any injury, loss or damage to any persons or to the Leased Premises or the Improvements, or to any property of Tenant, or of any other person, contained in or upon the Leased Premises or the Improvements, caused by or arising or resulting from the electric wiring, or plumbing, water, chilled water, steam, sewage, or other pipes, or by or from any machinery or apparatus, or by or from any defect in or leakage, bursting or breaking of the same or by or from any leakage, running or overflow of water or sewage in any part of the Leased Premises, or by or from any other defect whatsoever, or by or from any injury or damage caused by, arising or resulting from lightning, wind, tempest, water, snow or ice, in, upon or coming through or falling from the roof, skylight, trap doors, windows, marquees, metal or glass awning, or by or from other actions of the elements, or from any injury or damage caused by or arising or resulting from acts or negligence of any occupant or occupants of adjacent, contiguous or neighboring premises, or any other cause whatsoever (other than any such injury, failure, defect, loss or damage caused by the willful act or gross negligence of Landlord).

SECTION 19.3 - ENVIRONMENTAL INDEMNIFICATION.  Tenant shall comply with all Environmental Laws and regulations relating to the Leased Premises. Except for that which is caused by Landlord's negligence,Tenant, at its sole cost and expense, hereby indemnifies, and shall defend and hold harmless the Landlord and any successors to the Landlord's interest under the Sublease from and against any and all claims, demands, losses, damages, liabilities, fines, penalties, charges, administrative and judicial proceedings and orders, judgments, enforcement actions of any kind, and all costs and expenses incurred in connection therewith, including, without limitation, remediation costs, attorneys' fees and costs of defense, arising directly or indirectly, in whole or in part, out of: (a)(i) Tenant violations of any Environmental Laws, or (ii) the handling and disposal of any of the fill material related to the Leased Premises and/or any Hazardous Substances on, under or from the Leased Premises, or (iii) any spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping (including the abandonment or discarding of barrels, containers, and other receptacles containing any Hazardous Substance), (collectively a "Discharge") of any Hazardous Substances on, under or from the Leased Premises; (b) any activity carried on or undertaken on the Leased Premises, during the Term, and whether by Tenant in the Leased Premises or any employees, agents, contractors or subcontractors of Tenant at any time occupying or present on or in the Leased Premises in connection with the handling, treatment, removal, storage, decontamination, cleanup, transport or disposal of any Hazardous Substances at any time located or present on, in or under the Leased Premises; or (c) Tenant's use of the Leased Premises or in connection with the construction or equipping of the Project Facilities.  The foregoing indemnity shall further apply to any residual contamination on, in or under the Leased Premises, or affecting any natural resources arising in connection with the generation, use, handling, storage, transport or disposal of any such Hazardous Substances.

SECTION 19.4 - ENVIRONMENTAL REPORTS.  Tenant shall deliver to Landlord copies of any environmental reports prepared with respect to the Leased Premises ("Environmental Reports").  Nothing in any Environmental Reports shall be deemed to impose any obligation on the Landlord nor require the Landlord to take any action with respect to the Leased Premises.

ARTICLE XX

DAMAGE OR DESTRUCTION

SECTION 20.1 - DAMAGE OR DESTRUCTION. If all or any part of the Improvements at any time located in, on through or about the Leased Premises shall be damaged or destroyed by fire or other cause during the period of possession of the Leased Premises by Tenant pursuant to the provisions hereof, Tenant shall, with reasonable promptness, repair, Restore and replace the same.  In the repair, replacement or Restoration of the Improvements hereunder, Tenant shall cause the Improvements so damaged or destroyed to be Restored to at least the condition existing immediately prior to the damage or destruction, or otherwise so as to constitute a complete and operable Parking Garage Facility.  If the insurance proceeds recovered in respect of any such insured damage or destruction shall be insufficient to pay the entire cost of such Restoration, repairs or replacement, Tenant shall provide for the deficiency.

ARTICLE XXI

CONDEMNATION

SECTION 21.1 - PARTICIPATION IN PROCEEDINGS.  In the event that the Leased Premises or Improvements or any part thereof shall be taken in condemnation proceedings or by exercise of any right of eminent domain or by agreement between Landlord, Tenant and those authorized to exercise such right (any such matters being referred to as a "taking"), Landlord, Tenant and any person or entity having an interest in the award or awards shall have the right to participate in any such condemnation proceedings or agreement for the purpose of protecting their interests hereunder.  Each party so participating shall pay its own expenses.

SECTION 21.2 - TERMINATION.  If at any time after the Date of this Lease there shall be a taking of the whole or substantially all of the Leased Premises or Improvements, this Sublease shall terminate and expire on the date of such taking and the Rent hereunder shall be apportioned and paid to the date of such taking. For the purpose of this Article, "substantially all of the Leased Premises or Improvements" shall be deemed to have been taken if the untaken part of the Leased Premises or Improvements shall be insufficient for the economic (after payment of debt service, all operation expenses, and Rent) and feasible operation thereof by Tenant.

SECTION 21.3 - TAKING OF THE WHOLE OR SUBSTANTIALLY ALL THE LEASED PREMISES.  If this Sublease shall have terminated as a result of such taking, then the following provisions shall apply:

(a)     If at the time of such taking Tenant shall have erected or be engaged in the erection of Improvements on the Leased Premises, Tenant shall be entitled to the full building award as the term "building award" is hereinafter defined.  The building award shall be deemed to be that part of the award which shall be specifically attributable by the condemnation court to the Improvements or, if not so attributed by the court, as shall be determined by agreement between the parties.

(b)     Tenant shall also be entitled to the remainder of the award, excluding, however, the award for the Leased Premises land and for consequential damages to and diminution of the assemblage or plottage value of the Landlord's land not so taken, but including the award attributable to the Leased Premises with regard to Tenant's unexpired leasehold interest therein.

SECTION 21.4 - TEMPORARY TAKING.  In the event of a taking of all or a part of the Leased Premises or the Improvements thereon for temporary use, this Sublease shall continue without change, as between Landlord and Tenant.  Tenant shall be entitled to the award made for such use, except that such award shall be apportioned between Landlord and Tenant as of the date of the expiration or termination of the Term.  Tenant shall be entitled to file and prosecute any claim against the condemnor for damages and to recover the same, for any negligent use, waste or injury to the Leased Premises or the Improvements thereon throughout the balance of the Term.

SECTION 21.5 - PARTIAL PERMANENT TAKING.  In the event of a taking of less than the whole or substantially all the Leased Premises, this Sublease shall continue as between the Landlord and Tenant.

SECTION 21.6 - DISBURSEMENT OF CONDEMNATION PROCEEDS.  In the event Restoration, repairs, replacement or rebuilding of the Parking Garage Facility is necessitated as provided in Article XII at the time of condemnation, condemnation proceeds (except those to which Landlord is entitled under the terms of this Sublease) shall be paid to or deposited with a banking or similar institution and shall be disbursed for Restoration, repairs, replacement or rebuilding of the Parking Garage Facility in the manner and upon the conditions customarily applicable as the required work is completed.  If the condemnation award is insufficient to pay the entire cost of such Restoration, repairs, replacement or rebuilding, Tenant shall provide for the deficiency; in such event or in the event of any similar circumstance requiring Tenant to provide for any deficiency.

ARTICLE XXII

ASSIGNMENT AND SUBLEASES

Tenant shall not sublease, sell, assign or transfer (collectively for purposes of this Article XXII "transfer") this Sublease, or any part hereof, or any and all of its rights hereunder without first obtaining the written approval of the Landlord.

## ARTICLE XXIII

## DEFAULTS

In the event Tenant shall fail to pay Base Rent, Additional Rent or any other amounts due and payable by Tenant to Landlord hereunder or Landlord believes that Tenant is otherwise in default under the terms and provisions of this Sublease, Landlord shall give Tenant written notice of such nonpayment or other default specifying the amount due or payable or the condition or obligation that is in default, and a time period (which shall be twenty (20) days in the case of payment default and with respect to any other default, not less than thirty (30) days or as so much longer as Landlord reasonably deems to be required to cure under normal circumstances with due efforts and diligence) within which the default must be cured. Such notice shall be deemed given when sent to Tenant Certified Mail, Return Receipt Requested. Upon receipt of such notice, Tenant shall either timely cure such default or give notice to Landlord of Tenant's contests or defenses to such default. If the Tenant fails to either pay any amounts due and payable hereunder within the time period specified by Landlord or provide such a notice of contest, Landlord may take action to collect such amounts together with Default Interest and/or to terminate this Sublease. In the event Tenant contests the alleged default and the parties cannot mutually resolve these disputes, then the matter shall be submitted to a court of competent jurisdiction for resolution, and for a determination of the appropriate remedy at law or equity which shall apply should the court find a default has occurred and that default is not cured. If the Tenant is found to be in default, and fails to timely cure such default, then, in addition to and without prejudice of any other rights and remedies Landlord shall have at law or in equity, Landlord shall have the right to declare this Sublease terminated by reason thereof and any and all rights of Tenant hereunder shall thereupon terminate and the Landlord shall be entitled to re-enter the Leased Premises and shall automatically acquire all right, title, and interest in the Improvements and the parties shall be released from any further rights or obligations hereunder.

## ARTICLE XXIV

## APPRAISAL

If pursuant to this Sublease an appraisal is required, then each party shall select an appraiser who is qualified to appraise commercial real estate within the City of Cleveland and notify the other party of the appraiser so selected. Within thirty (30) days thereafter, the two (2) appraisers so selected shall select a third (3rd) appraiser, similarly qualified. If the two (2) appraisers are unable to so select the third (3rd) appraiser, either Landlord or Tenant may request the Administrative Judge of the Common Pleas Court of Cuyahoga County to select a third (3rd) appraiser. If no such Common Pleas court then exists, then either party may make such request to the senior judge of the state trial court having general jurisdiction within the City of Cleveland. Upon the selection of the third (3rd) appraiser, Landlord and Tenant shall provide a written statement of the issue in dispute or to be determined to the board of appraisers. The board of appraisers shall render a prompt written decision and shall deliver copies thereof to each party.

The decision of a majority of the appraisers shall constitute the decision of the board of appraisers and shall be incontestably binding upon and enforceable against each party hereto. Each party shall pay the fees and expenses of the appraiser selected by that party. The parties shall share equally the costs, fees and expenses of the third appraiser, including the costs, fees and expenses of selecting and appointing that appraiser.

## ARTICLE XXV

## MISCELLANEOUS

SECTION 25.1 - HOLDOVER. It is understood and agreed that should Tenant hold over the Leased Premises beyond the Basic Term, such holding over shall not be considered as a renewal or extension of this Sublease.

SECTION 25.2 - NO BROKERS. Landlord and Tenant each represent and warrant to the other that there are no brokerage fees or real estate commissions due and payable as a result of this Sublease. In the event one of the parties breaches this warranty, the breaching party covenants to defend, and indemnify and hold harmless, the other from and against any and all costs, claims, damages, expenses and disbursements of any kind or nature whatsoever (including, without limitation, reasonable attorneys' fees) for any compensation, commission or charges by, or due, any broker or real estate agent who alleges to have been employed by the breaching party in connection with this Sublease or the negotiation thereof.

SECTION 25.3 - FORCE MAJEURE. If, by reason of Force Majeure, the Tenant is unable to perform its obligations under this Sublease including but not limited to, complying with the Substantial Completion of construction of the Parking Garage Facility as required by this Sublease, the Tenant shall not be deemed in default during the continuance of that inability. However, the Tenant shall promptly give notice to the Landlord of the existence of an event of Force Majeure and shall promptly remove the effects thereof.

SECTION 25.4 - ESTOPPEL CERTIFICATES. At any time and from time to time, each party agrees that such party shall upon request in writing from the other, execute, acknowledge and deliver to the other party a statement in writing certifying that this Sublease is unmodified and in full force and effect (or if there have been modifications, that the same is in full force and effect as modified and stating the modifications), the dates to which the Basic Rent, Additional Rent and other charges have been paid, and making such other accurate certifications relating to this Sublease as the party may reasonably require.

SECTION 25.5 - INVALIDITY OF PARTICULAR PROVISIONS. If any term or provision of this Sublease or the application thereof to any person or circumstance shall to any extent, be invalid or unenforceable, the remainder of this Sublease or the application of such term or provision to persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and each other term and provision of this Sublease shall be valid and be enforced to the fullest extent permitted by law.

SECTION 25.6 - APPLICABLE LAW AND CONSTRUCTION. The laws of the State of Ohio shall govern the validity, performance and enforcement of this Sublease. The headings of the several Articles and Sections contained herein are for convenience only and do not define, limit or construe the contents of such Articles or Sections. Except as expressly provided otherwise, whenever Landlord's or Tenant's permission, consent, approval, cooperation or other act or omission is required pursuant to the terms of this Sublease, such act or omission shall not be unreasonably withheld, conditioned or delayed.

SECTION 25.7 - NOTICE. Except for the notice required in Article XXIII, all notices or other communications required to be given hereunder shall be given in writing and shall be deemed to have been duly given on the date delivered to the addressee whether delivered personally, delivered to a nationally recognized overnight courier service, or mailed by U.S. registered or certified mail, postage prepaid and addressed as follows:

(a)     Notice to the Landlord:

University Circle, Incorporated
10841 Magnolia Drive
Cleveland, Ohio  44106


(b)     Notice to Tenant:

Cleveland Botanical Garden
11030 East Boulevard
Cleveland, Ohio  44106

Either party may change its notice address if it so notifies the other party pursuant to this Section.

SECTION 25.8 - MEMORANDUM OF SUBLEASE. At the option of either party, a Memorandum of Sublease in the form prescribed by statute shall be filed for record. The party requesting the filing of a Memorandum of Sublease shall pay the recording fees and any other fees associated therewith.

SECTION 25.9 - CONSTRUCTION OF TERMS. Whenever the singular or plural number, or masculine, feminine or neuter gender is used herein, it shall equally include the other, and the terms and provisions of this Sublease shall be construed accordingly.

SECTION 25.10 - AGREEMENT BINDING UPON SUCCESSORS. The covenants, agreements and obligations herein contained shall extend to, bind and inure to the benefit not only of the parties hereto, but their respective personal representatives, heirs (if applicable), successors and permitted assigns.

SECTION 25.11 - AUTHORITY. Each of the parties represents and warrants to the other that it has full right, power and authority to enter into and to perform its obligations pursuant to this Sublease.

SECTION 25.12 - SURVIVAL.  The provisions of this Sublease shall survive any expiration or termination of the Term to the extent necessary to carry out the intent and expectations of the parties.

SECTION 25.13 - COMPLETE AGREEMENT.  All negotiations, considerations, representations and understandings between the parties as to the Leased Premises are incorporated herein, and may be modified or altered only by agreement in writing signed by both parties to this Sublease.

SECTION 25.14 - NON-WAIVER.  Failure of Landlord or Tenant to complain of any act or omission on the part of the other party, however long the same may continue, shall not be deemed to be a waiver by said party of any of its rights hereunder.  No waiver by Landlord or Tenant at any time, express or implied, of any breach of any provision of this Sublease shall be deemed a waiver of a breach of any other provision of this Sublease or a consent to any subsequent breach of the same or any other provision.  No acceptance by Landlord of any partial payment shall constitute an accord and satisfaction, but shall only be deemed a part payment on account.  No agreement, term, covenant or condition hereof to be performed or complied with by Tenant and no breach or default thereof shall be waived, altered or modified except by written instrument executed by Landlord.

SECTION 25.15 - NO THIRD PARTY BENEFICIARIES.  Nothing contained in this Sublease shall be construed so as to confer upon any other party the rights of a third party beneficiary.

SECTION 25.16 - TIME IS OF THE ESSENCE.  Time is of the essence in this Sublease.

SECTION 25.17 - EXHIBITS.  All Exhibits attached hereto are incorporated herein as if fully rewritten herein.

IN WITNESS WHEREOF, the Landlord and the Tenant have each caused this Sublease to be executed after due authorization as of the Date of this Sublease.

Witnesses:

Print Name  *CHARlotTC  m. KUATZ*

Print Name  *Cindy Stefanov*

Print Name  *FAYE CALLAHAN*

Print Name  *P. John Gustat, Jr.*

Landlord:

UNIVERSITY CIRCLE,
INCORPORATED

By: _David T. Abbot_

Name:        David T. Abbott
Title:        President


Tenant:

CLEVELAND BOTANICAL GARDEN

By: _Robert A. Rensel_

Name:        Robert A. Rensel
Title:        Chief Financial Officer

STATE OF OHIO          )
                                ) SS:
COUNTY OF CUYAHOGA )

On this **23ʳᵈ** day of **JANUARY**, 200**9**, before me, a Notary Public in and for said County and State personally appeared David T. Abbott of University Circle, Incorporated, who acknowledged that s/he did sign the foregoing instrument as President of University Circle, Incorporated, on behalf of said Corporation; and that the execution of said instrument is the voluntary act and deed of the said officer and the voluntary and corporate act and deed of said Corporation for the uses and purposes therein expressed.

IN WITNESS WHEREOF, I have hereunto subscribed my name and affixed my official seal on the day and year aforesaid.

_Carol L. Kownbski_
Notary Public

STATE OF OHIO          )
                                ) SS:
COUNTY OF CUYAHOGA )

On this **23ʳᵈ** day of **JANUARY**, 200**9**, before me, a Notary Public in and for said County and State personally appeared Robert A. Rensel of Cleveland Botanical Garden, who acknowledged that s/he did sign the foregoing instrument as Chief Financial Officer of Cleveland Botanical Garden, on behalf of said Corporation; and that the execution of said instrument is the voluntary act and deed of the said officer and the voluntary and corporate act and deed of said Corporation for the uses and purposes therein expressed.

IN WITNESS WHEREOF, I have hereunto subscribed my name and affixed my official seal on the day and year aforesaid.

_Carol L. Kownbski_
Notary Public



WADE OVAL

EXHIBIT A

# GARRETT & ASSOCIATES, INC.

Civil Engineers • Land Surveyors
Since 1890

2030 West 19th Street
Cleveland, Ohio 44113-3549

Attachment B

Phone 216-696-6080
Fax 216-696-5552

NEW
SUBLEASE PARCEL "A"

Situated in the City of Cleveland, County of Cuyahoga, and State of Ohio, and known as being part of Original 100 Acre Lot No. 395, bounded and described as follows:

Beginning at the southwesterly corner of Sublease Parcel A, leased from University Circle Incorporated to the Garden Center of Greater Cleveland, dated September 14, 1988 (not recorded), said point being on the northerly curb line of Park Drive and a 5/8" capped iron pin set;

Course No. 1: thence South 82°-33'-36" West along said northerly curb of Park Drive, a distance of 179.54 feet to a drill hole & "x" set;

Course No. 2: thence North 10°-10'-04" West, a distance of 202.00 feet to a 5/8" capped iron pin set;

Course No. 3: thence North 79°-49'56" East a distance of 145.41 feet to the easterly line of Sublease Parcel "B", as shown on the Survey for Cleveland Botanical Gardens, by Garrett & Associates, Inc. made in January, 1998, and a 5/8" capped iron pin set;

Course No. 4: thence South 7°-14'-00" East along said easterly line of Sublease Parcel "B", a distance of 19.33 feet to a 5/8" capped iron pin set;

Course No. 5: thence continuing along said easterly line of Sublease Parcel "B" and along the arc of a circle deflecting to the right 52.41 feet, said curved line having a radius of 160.00 feet and a chord which bears South 17°-44'-28" West a distance of 52.17 feet to an angle therein and a 5/8" capped iron pin set;

Course No. 6: thence North 79°-57'-39" East along the Southerly line of said Sublease Parcel "B", a distance of 59.67 feet to its intersection with the westerly line of the aforementioned Sublease Parcel A and a 5/8" capped iron pin set;

Course No. 7: thence South 10°-02'-21" East along said westerly line of Sublease Parcel A, a distance of 145.00 feet to the place of beginning, containing 34,249 square feet of land (0.7863 acres), according to a survey by Garrett & Associates, Inc., Registered Engineers and Surveyors, made in September, 2000, be the same more or less.

Bearings are to an assumed meridian and are used to denote angles only.

L99-39

September 5, 2000

Attachment B



| Activity Description | Orig Dur | Early Start | Early Finish |
|---|---|---|---|
| **Sitework** | | | |
| Procure Utility / Shoring Material | 20 | 29JAN01 | 23FEB01 |
| Mobilization | 10 | 12FEB01 | 23FEB01 |
| Wade Oval Sewer Relocation | 60 | 20FEB01 | 14MAY01 |
| Barricades/Street Closings/Tree Protection | 5 | 26FEB01 | 02MAR01 |
| Site Lay-out & Field Engineering | 10 | 26FEB01 | 09MAR01 |
| Shoring System | 20 | 26FEB01 | 23MAR01 |
| Tree Removal | 5 | 01MAR01 | 07MAR01 |
| Utility Relocations & New Services | 30 | 12MAR01 | 20APR01 |
| Install De-watering System | 15 | 26MAR01 | 13APR01 |
| Garage Main Building Construction | 600 | 23APR01 | 11AUG03 |
| Site Paving/Landscaping/Finishes | 20 | 23APR02 | 20MAY02 |
| Site/Trailer Demobilization | 13 | 14AUG03 | 01SEP03 |

Project Start 18MAR00
Project Finish 01SEP03
Data Date 19DEC00

△ Early Bar
▲ Progress Bar
▲ Critical Activity

Donley's, Inc.
Cleveland Botanical Gardens

Attachment D

Sheet 1 of 1