# EXHIBIT K



# STRAUSS TROY
#### attorneys at law

MATTHEW W. FELLERHOFF  
Writer's E-Mail: mwfellerhoff@strausstroy.com

Writer's Direct Dial: 513.768.9791

June 13, 2013

CERTIFIED MAIL  
RETURN RECEIPT REQUESTED

Barbara A. Langhenry, Interim Director  
Cleveland Department of Law  
601 Lakeside Ave., Room 106  
Cleveland, Ohio 44114

Re: Demand to Enforce Lease Obligations Through R.C. §§ 733.57, 733.58, Cleveland Charter §§ 88 and 89

Dear Interim Director Lanhenry:

I write to you on behalf of our client, William Garretson Wade, a Cleveland taxpayer and an heir of Jeptha H. Wade, the grantor of what is now commonly known as Wade Park. As you may know, the City of Cleveland ("City") has leased portions of Wade Park to the Cleveland Botanical Garden ("CBG") and University Circle, Inc. ("UCI"). As set forth in the leases governing this public space, CBG agreed to comply with the conditions placed on Wade Park, including, preserving the land as a public park to be open at all times to the public, ensuring that the property exists for no other purpose than a public park, and preventing the enclosure of the space other than by open, wrought iron fencing. See, Jeptha H. Wade, Deed of Wade Park to the City of Cleveland, Sept. 15, 1882, recorded in Cuyahoga County, Vol. 341, pp. 165-67 ("Wade Grant"), attached as Exhibit A.

Contrary to these clear conditions that were intended to maximize the public's access and contrary to their incorporation into the leases governing this property, CBG now restricts access to a significant portion of Wade Park, charges admission and/or limits access to the public. It is evident that CBG has engaged in a progressive outward march, continually expanding its footprint in Wade Park while limiting free public use and enjoyment of those portions of the park in plain violation of the conditions of the Wade Grant and of CBG's lease with the City. CBG's business model appears to include consuming portions of the Wade Grant for itself and to then charge citizens for what the Wade grant guaranteed would be free to all. It is now apparent that CBG's expansion plan includes designs to potentially take all of Wade Oval, destroying Wade Park as it was intended for Cleveland citizens and visitors. Accordingly, for the reasons set forth below, our client demands that you immediately file suit for the specific performance of the obligations within the leases by and between the City and CBG/UCI concerning Wade Park, or alternatively, for forfeiture of those leasehold interests pursuant to R.C. § 733.57 and Cleveland Municipal Charter § 88



Page 2

and that you file suit to compel the City's performance of its obligations under the Wade Grant pursuant to R.C. § 755.19, through R.C. § 733.58 and Cleveland Municipal Charter § 89.

## I. Wade Park to Be Open at All Times to the Public.

Jeptha H. Wade was a prominent benefactor for the City of Cleveland whose civic achievements continue to benefit the City to this day. Mr. Wade devoted a significant portion of his personal wealth and success in the telegraph industry to improve the City of Cleveland for all of its residents. Not only did Mr. Wade co-found the Case School of Applied Technology (a part of Case Western Reserve University), he also helped create the Hathaway Brown School, and is credited with helping to establish the Cleveland Museum of Art, the Cleveland Metroparks Zoo and Lake View Cemetery.

Mr. Wade's passion for the City and his legacy survive through his namesake – Wade Park. Mr. Wade recognized the importance of preserving natural, open space within the City for all of Cleveland's citizens, not just for the moneyed few. In fact, Wade Park was the result of Mr. Wade's tireless effort that began as early as 1872 when he set out to transform his own lands into a public park. In 1881, the *Plain Dealer* wrote that Wade "spent large sums of money in beautifying the place, and, although it has been his private park, it has been kept open in the summer season heretofore for the pleasure and benefit of citizens and strangers." Cleveland *Plain Dealer*, May 24, 1881, p.4.

Shortly thereafter, in 1882, Wade Park became one of the first large grants of land to the City of Cleveland. When Mr. Wade granted Wade Park to the City, consistent with keeping the land accessible to "citizens and strangers," Wade required the City to maintain the area as a park freely open to the public:

> being desirous of securing to the citizens of Cleveland for all time the opportunity of re-creating, having, improving, and maintaining **a beautiful and attractive Public Park therein for the benefit of all the people**...

Wade Grant at 165 (emphasis added). Mr. Wade never intended to bifurcate the park to distinguish visitors' experience between members and non-members.

In exchange for receiving Mr. Wade's land, among other conditions, Wade Park was to be: (1) open at all times to the public; (2) maintained to allow for traversing *through* the Park; (3) used for no other purpose than a public park; and (4) fenced, if at all, with only open, wrought iron fencing (except on the westerly and southerly boundary) (collectively, "Wade Conditions"). The Wade Grant could not be clearer:

> This conveyance is made to the said City of Cleveland forever in trust the following purposes and upon the express conditions following to wit:

\*\*\*

[1] **The said grounds at all times thereafter to be kept and maintained by said City in such repair and condition as to make it an attractive and desirable place of resort as a Public Park to be <u>open at all times to the public.</u>** [2] The abutting land owners, their heirs and assigns, to have free ingress and egress **through** the same...

\*\*\*

[3] To be for **no other purpose than a Public Park** and to be called and known forever by the name of Wade Park. [4] If fencing shall ever be placed on said Park grounds, except on the westerly and southerly boundary, **it shall be open wrought iron fence**.

*Id.* at 166 (emphasis added).

The Wade Conditions ensure that all members of the public have the opportunity to freely explore the natural preserve through its paths and walkways. The Ohio Revised Code obligates the City to manage and administer Wade Park in accordance with the Wade Conditions. R.C. § 755.19 ("In any municipal corporation which is the owner or trustee of property for park purposes ... by deed ... such property ... shall be managed and administered in accordance with the provisions or conditions of such deed...").

## II. The City of Cleveland Binds Cleveland Botanical Garden to Conditions of the Wade Grant.

### A. 1964 Lease Expressly Incorporates the Wade Grant Obligations.

The City leased a portion of Wade Park to The Garden Center of Greater Cleveland ("Garden Center") on December 9, 1964 ("1964 Lease"). An express term of the fifty-year lease required the Garden Center to "in particular make such uses only of the leased premises as **are consistent with any conditions, restrictions or limitations and covenants contained in [the Wade Grant]**." Indenture of Lease, Dec. 9, 1964, recorded on Apr. 2, 1968 in Cuyahoga County Records Vol. 458, pp. 303-12, 306 (emphasis added), attached as Exhibit B. Additionally, the Garden Center was expressly prohibited from charging admission for the entrance to the center itself, except for "special events" or "fees for the use of the facilities" and from limiting access through enclosing or barricading any part of Wade Park except as required to improve or maintain its facilities. *Id.* at 306-307.

### B. 1971 Supplemental Lease Extends Wade Grant Obligations to 2068.

The terms of the 1964 Lease, including limiting the use of Wade Park to those uses consistent with the Wade Grant, were again incorporated into the City's "Supplemental Indenture of Lease" with the Garden Center on April 15, 1971. Supplemental Indenture of

Lease, Apr. 15, 1971, recorded on Dec. 10, 1997 in Cuyahoga County Records Vol. 97-12785, pp. 9-13, attached as Exhibit C. This lease also extended the terms of the lease obligations to December 31, 2068. *Id.* at 10.

### C. 2008 Second Supplemental Lease Again Expressly Acknowledges Wade Grant.

Then in 2008, City and CBG[1] again ratified the Wade Grant obligations, including the Wade Conditions, in a new lease agreement. Second Supplemental Indenture of Lease Agreement, Dec. 18, 2008, recorded on July 16, 2009 in Cuyahoga County Records Doc. No. 200907161035 ("2008 Lease") attached as Exhibit D.

The 2008 Lease leaves no doubt that the Wade Conditions were ratified and imposed upon CBG. The 2008 Lease states that "all terms, covenants, conditions, and provisions [that were not specifically amended] shall be and remain unchanged and in full force and effect..." *Id.* at p. 3. The first recital in the 2008 Lease expressly incorporates the Wade Grant and cites to its recorded obligations.

Moreover, the lease made clear that these obligations run with the land: "[a]ll terms, covenants, conditions, and provisions contained in the Lease and this Second Supplemental Lease shall be binding upon ... the parties ... and shall run with the land." *Id.* Therefore, there can be no doubt that the City is obligated to enforce the Wade Conditions and that the City has the contractual right to force its tenant, CBG, to conduct its operations consistent with the Wade Conditions.

### D. Similar Leases with University Circle, Inc. Concerning Wade Park Require Compliance with the Wade Grant.

In 1971, the City also leased portions of Wade Park, including the area now known as "Wade Oval" to UCI. Under the terms of its lease, UCI obtained the leased property:

> for the purpose only of **maintaining a public park, including gardens**, upon the following covenants, terms and conditions:
>
> \*\*\*
>
> [UCI] shall maintain the Premises in full compliance with the covenants of the [City] contained in any deed by which the [City] acquired title or by which the [City] joined with others in placing conditions, restrictions, or limitations on the Premises herein described, and **shall in particular make such uses as are consistent with any conditions, restrictions or limitations and covenants contained in a deed dated September 15, 1882, in which Jeptha H. Wade is the grantor**

---

[1] The Garden Center changed its name to the Cleveland Botanical Garden in 1994.

> and the [City] is the grantee, which deed is recorded in Volume 341, page 165, of Cuyahoga County Records.
>
> \*\*\*
>
> **No structure** shall be erected above the surface except *light poles*, *fountains* and *shelters* appropriate for park purposes.

Unrecorded Lease Between the City and UCI, March 16, 1971 (emphasis added), attached as Exhibit E. Accordingly, the City's lease with UCI maintained the Wade Conditions on UCI's use of Wade Park making clear that no structure was permitted above ground except for light poles, fountains and shelters.

UCI subsequently subleased certain portions of Wade Park to the CBG. Specifically, the two parties entered into a sublease concerning lighting and irrigation on September 15, 1988, attached as Exhibit F; an extension of lighting and irrigation sublease on March 5, 2001, attached as Exhibit G; the children's garden on September 2, 1998, attached as Exhibit H; the garage on January 23, 2001, attached as Exhibit I; and the expanded outdoor garden in 2006, attached as Exhibit J.

Common among all of these subleases is that CBG assumed the obligations imposed upon UCI through its lease with the City. *See e.g.*, Ex. G, March 5, 2001 sublease, at 6 ("The Garden Center hereby takes and subleases the Sublease Premises and hereby **assumes all of the obligations** of [UCI] under the [1971 lease] with respect to the Sublease Premises..."); Ex. J, 2006 sublease, at 2, ¶ 3 ("CBG agrees ... to maintain the Sublease Premises in a neat and sightly condition, and **in conformance with any requirements** imposed by the City of Cleveland under its lease with UCI.").

Therefore, whether the space is currently leased by UCI or CBG, each lease requires CBG to operate in complete conformity with the Wade Grant, including the Wade Conditions.

### III. The Cleveland Botanical Garden Violates Its Leases By Conditioning Access on Admission and Preventing Ingress and Egress Through Wade Park.

Despite the Wade Conditions' requirement to preserve Wade Park as a publicly accessible park open to all people at all times, CBG, through its leases with the City and subleases with UCI, has restricted access to the Park's grounds through increased enclosed fencing and requiring all non-members to pay admission fees to the enclosed areas.

In or about 2003, contrary to the terms of its lease and in violation of the Wade Grant, CBG began charging admission to visit its leased grounds. Because this limitation of access violates the Wade Conditions, CBG attempted to obtain consent from Jeptha Wade's heirs. However, our client, a Cleveland taxpayer and Jeptha Wade heir, did



Page 6

not and cannot approve the privatization of what was intended to remain public – Wade Park.

Mr. Wade has tried to work with CBG over the last several years to reach a compromise that would commit CBG to preserve Wade Park in a manner consistent with the Wade Grant. Despite Mr. Wade's overtures, CBG continues to enclose more and more of Wade Park with fencing material that not only violates the Wade Conditions, but that further limits access to the Park and prevents the public from travelling through its paths and walkways.

Instead, CBG, without any legal ability to do so, persists in extinguishing the public's free and fair access to Wade Park, and then profiting off of this "acquisition." It also appears that CBG sought to surreptitiously obtain the approval of the Wade heirs to expand into the whole of the Wade Oval, well beyond the scope of the lease, completely contrary to the intent of the Wade Grant (and Wade Park.) Much of Wade Park is now only accessible by dues-paying members or visitors who pay admission fees. Not only does CBG restrict access to its members and paying customers, it encloses and conceals serene portions of the park from the public. CBG limits access to its enclosed areas of Wade Park to six-days a week. Such arbitrary access and continued enclosure of the grounds with unauthorized fencing materials violates the Wade Grant and the clear and unambiguous terms of the lease. While CBG's policy to restrict access may benefit its proprietary interests, it creates two different classes of visitors, those who pay and trespassers. This limitation of access directly contravenes the Wade Grant's intent for this land to remain open to the public.

As a Cleveland taxpayer, William Garretson Wade hereby demands that you immediately file suit to enforce the obligations of the leases governing Wade Park and alternatively, to seek a forfeiture of the tenants' interest in the leases pursuant to R.C. § 733.57 and Cleveland Charter § 88. Additionally, our client demands that you compel the City's performance of its obligations under the Wade Grant to the extent that such performance contravenes the Wade Conditions pursuant to R.C. § 755.19 through R.C. § 733.59 and Cleveland Charter § 89, including prohibition of CBG's charging of admission in the outdoor areas of the Park.

I want to reiterate that my client supports the Cleveland Botanical Garden and the benefits it could offer to all of Cleveland's citizens. Mr. Wade only seeks to harmonize the activities conducted within the Park with the rights of the "citizens and strangers" as set forth and required by the Wade Grant. All the people – including those who cannot afford to pay annual membership dues or admission fees – are entitled to enjoy Wade Park.

Clevelanders deserve to fully use and enjoy Wade Park. Therefore, Mr. Wade requests that you file suit on or before July 1, 2013 Any failure to enforce the City's obligations and to preserve the public's rights will require my client to pursue all legal remedies available to him, including filing suit under R.C. § 733.59 and Cleveland Charter § 90.



Page 7

        Mr. Wade and I appreciate your anticipated, prompt consideration of and action upon the foregoing. Please do not hesitate to contact me if you have any questions.

        Sincerely,

        STRAUSS TROY

        Matthew W. Fellerhoff

Enclosures
cc:   William Wade
3381021_1.doc